**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ANNE W. WITHINGTON,**

    **Plaintiff,**

**v.**                                                       Case No. 8:08-cv-1647-T-TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

## O R D E R

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-one years of age at the time of her administrative hearing in October 2006. Plaintiff has a high school education. Her past relevant work was as a police dispatcher, cashier, bindery clerk, dental assistant, stock clerk, and in customer service. Plaintiff applied for disability benefits and Supplemental Security Income payments in January 2004, alleging disability as of June 20, 2002, by reason of back pain, depression, and anxiety. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that she could no longer work because of depression, anxiety, constant radiating pain in her back and leg, knee pain, headaches, and incontinence. As Plaintiff described her depression, she has no desire to leave her house or to socialize. Getting around people and in crowds makes her very anxious. She described her pain as constant from her neck through her lower back. Her low back pain is severe and throbs all the time. She described a burning sensation which goes down her right leg and into her heel. She testified that she tore a meniscus in her knee and it burns all the time. She has had problems with incontinence for many years and almost any activity aggravates the condition. A surgical procedure in April 2006 has helped some. Plaintiff suffers from anxiety attacks, especially when around crowds of people. She has great difficulty sleeping at night and naps one or more times during the day. Plaintiff claims that there are some days she cannot get out of the bed.

By her account, she is unable to care for her children. Her two oldest children cook for themselves and help feed and care for the baby. She takes the older children to school and picks them up daily. When she returns home, she usually lies on the couch and watches television with the baby. She attempts to help the older children with homework but cannot concentrate and her father ends up helping them. The children get their dinner and help get the baby ready for bed. Plaintiff's father also helps with the shopping.

As Plaintiff described her limitations, she uses a cane to walk because it helps with her knee and the right side of her back. However, she is unable to walk far even with the

cane. Standing eventually makes her leg go numb and she needs to sit down. As she described it, her leg hurts, her knee cramps, her back gets weary, and then she sits. However, she cannot sit for long, maybe five minutes or so, and then she must get up because of back pain. She is unable to lift her baby. She can possibly lift a five pound bag of sugar, but with pain.

Plaintiff sees her psychiatrist on a monthly basis and a pain management doctor every month or so. She takes a number of medications including Seroquel, Zanax, Oxycodone, Soma, and Zoloft. The side effects include lethargy, drowsiness, weakness, and dry mouth. Plaintiff has also undergone epidural treatments for back pain but has not obtained significant relief.

Plaintiff has experienced migraine headaches since age five. Sometimes they occur as often as two to three times a week and can last two to three days. Other times they occur one to two times a month. She has been using Imitrex for ten to fifteen years as needed and it helps take the edge off. When she has such headaches, she must lie down.

Plaintiff testified that she is unable to perform any of her former jobs because of her inability to sit or stand long enough to accomplish the job. Because of her lack of concentration, she no longer reads and she is no longer the organized person she once was. (R. 77-97).

The ALJ next took testimony from Teresa Manning, a vocational expert ("VE"). After classifying Plaintiff's former work, the VE testified on an assumption of an individual of Plaintiff's age, education, and past work experience, capable of a limited range of light work that did not require exposure to dangerous moving machinery or unprotected heights, the ability to perform detailed or complex tasks, or more than occasional interaction with the

3

public. Upon that assumption, the VE testified that such individual could perform Plaintiff's former work as a data entry clerk. On a further assumption of an individual capable of only sedentary exertional work with the need to alternate sitting/standing every thirty minutes; no climbing ladders or scaffolding; only occasional climbing of stairs or ramps, balancing or stooping; no crouching, kneeling, crawling, or work around dangerous moving machinery; no detailed or complex tasks; and only occasional interaction with the public, the VE opined that the individual could no longer do Plaintiff's data entry job but could perform work as a proof reader, ticket checker, and final assembler. On the further assumption that pain and pain medication would prevent such individual from having the attention and concentration necessary for a full work week, the VE testified that no work would be available. The limitations imposed by Dr. Rodriguez would also prevent all competitive work. Using the ALJ's second hypothetical but adding limitations for unscheduled breaks and lying down every thirty minutes during every two-hour period, the VE opined that such individual could not perform competitive work. If such individual could not work a regular shift but would need the accommodation of working only when able, the VE indicated that no competitive work would be available. (R. 98-103).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Plaintiff's date last insured for disability benefits was December 31, 2007.

By his decision of January 29, 2007, the ALJ determined that while Plaintiff has severe impairments related to obesity, arthritis of the right knee with meniscus tear, osteoarthritis of the right wrist, mild degenerative disk disease of the cervical and lumbar spine, migraine headaches, history of urinary incontinence and surgery, depression, and

4

anxiety, she nonetheless had the residual functional capacity to perform a limited range of sedentary exertional work  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R.26-52).  The Appeals Council denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of*

*Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

1) Did the ALJ properly consider the diagnoses and opinions of Claimant's treating physicians?

6

2) Did the ALJ properly consider each and every impairment and symptom and their combined effect on work ability?

By her first claim, Plaintiff urges that the ALJ failed to properly credit the opinions of Dr. Luis C. Rodriguez, a psychiatrist who treated Plaintiff over a three-year period and assessed her with limitations which essentially rendered her incapable of performing any competitive employment. Plaintiff urges that no evidence contradicts the opinions of this doctor apart from the assessments by nonexamining, reviewing doctors who did not have all of Dr. Rodriguez's treatment notes when rendering their opinions. She claims that the ALJ has failed to state good cause for rejecting the opinions of Dr. Rodriguez and thus his opinions must be accepted as true. (Doc. 18 at 16-18).

In response, the Commissioner urges that the ALJ properly reviewed the treatment records and addressed the reasons for not fully crediting the doctor's opinions. Thus, the ALJ noted that the opinions of this treating doctor were inconsistent with his own treatment records, which reflected moderate diagnoses, conservative treatment, and positive results from medications, and that Plaintiff's self-reported activities belied her claims of severe mental limitations. The Commissioner also discounts the import of the single low Global Assessment of Functioning ("GAF")[1] score assessed in February 2003 as reflecting on only her then current state and not necessarily on her disability from all work. (Doc. 19 at 5-9).

Plaintiff is correct that when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause

---

[1] GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV).

7

is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor*, at 1053.

As the decision reflects, the ALJ conducted a thorough review of the medical evidence including the records from Dr. Rodriguez. Ultimately, the ALJ accepted the doctor's diagnosis of depression and assessment of moderate limitations in a number of areas. However, the ALJ rejected the more restrictive functional limitations identified by the doctor as overstating Plaintiff's limitations.[2] Chiefly, this was because the ALJ found the limitations inconsistent with the doctor's treatment records and the responsible activities which Plaintiff reported she was involved in over a period of time. The ALJ concluded that, at most,

---

[2]The first assessment at issue was rendered in March 2005 (R. 428-29) and the second in October 2006. (R. 501-02). In both, the doctor rated Plaintiff as "poor" in a number of functional areas such as maintaining attention and concentration, maintaining regular attendance and schedules, working with others, and completing a normal work day. "Poor" is defined on the assessment as "no useful ability to function."

8

Plaintiff suffered only moderate mental limitations. As this related to Plaintiff's residual functional capacity, the ALJ concluded such would preclude Plaintiff from performing detailed or complex tasks and allow for only occasional work with the general public. While not challenging the residual functional capacity assessment by the ALJ, Plaintiff urges that because there were no contrary mental health records, the ALJ could not discount the assessments by Dr. Rodriguez.[3] I disagree.

As indicated above, the applicable standard allows for an ALJ to discount the opinions of a treating doctor for good cause. Here, the ALJ listed a number of specific reasons for not fully crediting the doctor's opinion and those reasons are supported by substantial evidence. In the circumstances, I am obliged to conclude that, unlike the circumstances in *Schnorr* and *Hillsman*, the ALJ in this case has offered good and adequate cause for discounting the "poor" rating the doctor assigned to several functional areas. Thus, the ALJ noted that the doctor had diagnosed <u>moderate</u> depression, there were indications that medications helped, and over a period of time, Plaintiff candidly admitted to carrying on a number of highly responsible daily activities such as caring for her children, her parents, home schooling her children, and teaching Bible school. There were also some efforts at socializing and Plaintiff enjoyed traveling. As for her anxiety attacks, they were not well documented in the record, and the low GAF score was assessed early on and not consistent with the long-term picture of Plaintiff's mental health.[4] Thus, I conclude that the ALJ has

---

[3] Here, Plaintiff cites *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[4] Courts have recognized that a low GAF score does not require a finding of disability. *See Seymore v. Apfel*, 131 F.3d 152, 1997 WL 755386, at *2 (10th Cir. 1997) (unpublished table decision); *Sanchez v. Astrue*, No. 8:06-cv-1832-T-EAJ, 2008 WL 822000, *3 (M.D. Fla.

9

articulated adequate reasons for discounting the assessments by Dr. Rodriguez to the extent they suggested Plaintiff had no useful functional ability to function in certain areas. Contrary to Plaintiff's argument, it does not appear that the ALJ relied on the reports of the nonexamining doctors to contradict Dr. Rodriguez's assessments, although, in the end, their assessments of the Plaintiff's mental capabilities were given great weight.[5] Instead, the ALJ viewed the actual circumstances of Plaintiff's life and the long history of Dr. Rodriguez's care and concluded that, while Plaintiff was substantially limited, she nonetheless could maintain concentration, regular attendance and schedule; act appropriate and work around others; and complete a normal workday and week.

As noted above, the Plaintiff does not argue or demonstrate that the ALJ's residual functional capacity assessment for a limited range of sedentary work is unsupported by substantial evidence or that she suffers more mental limitations than those credited by the ALJ's assessment. Thus, I conclude that Plaintiff is not entitled to benefits on this first claim.

On her second claim, Plaintiff urges that the ALJ incorrectly assessed her "history" of urinary incontinence and made no mention of her cataracts/amblyopia, recurrent kidney infections, or asthma. As a consequence, she urges that the ALJ did not consider the combined effects of all impairments and a remand is required. (Doc. 18 at 18-19).

For the reasons urged by the Commissioner, I conclude that the ALJ fairly and fully considered each of these purported impairments and that Plaintiff fails to demonstrate

---

Mar. 26, 2008); *Cox v. Apfel*, No. 99-2296-JWL, 2000 WL 1472729, at *9 (D. Kan. Feb. 24, 2000).

[5]Both reviewing doctors assessed mild to moderate limitations by reason of depression. *See* (R. 340-57, 397-413). They did not have the benefit of all of Dr. Rodriguez's records or his assessments at issue here.

otherwise. Most significantly, Plaintiff makes no showing of any functional limitations arising from any of these conditions which would alter the outcome of her claim. As the decision reflects, the ALJ twice recognized medical reports from Dr. Cordano related to her eyes. (R. 33, 35). Those records suggest that her complaints were addressed with prescription glasses.[6] Further, the records give no indication of a severe condition related to her eyes or significant limitations in vision. On this appeal, Plaintiff makes no showing of any functional limitations which could possibly bring the decision into question. As for her urinary incontinence, again the decision reflects the ALJ's consideration of the medical evidence of the same and the conclusion that Plaintiff's ability to work was not restricted by the condition, especially after her surgical procedure in April 2006. (R. 48). Substantial evidence supports the conclusion and Plaintiff makes no showing to the contrary. As for kidney infections, the ALJ expressly noted the record evidence of the same but determined that the conditions was not severe. (R. 28-29). As for asthma, the ALJ cited to Plaintiff's "history of asthma" reflected in a pulmonologist's report, but noted the lack of any evidence of a breathing impairment. (R. 29). As above, Plaintiff makes no showing that these conclusions are contrary to the medical evidence or that she experiences functional limitations from these conditions not considered by the ALJ. Finally, as for the ALJ's consideration of the combined effect of Plaintiff's impairments, the decision reflects that the ALJ recognized his obligation to do so. (R. 27, 29). Further, the ALJ specifically found that

---

[6]In his brief, the Commissioner cites to records from St Luke's for evidence related to cataracts/ amblyopia. In the decision, the ALJ noted that those records appeared to be for someone else and thus weren't considered. While it does appear that Plaintiff was given a referral to St Luke's there are no records to support any claim of serious limitations and, on this appeal, Plaintiff makes no demonstration of any functional limitations by reason of either cataracts or amblyopia.

11

the medical record did not establish that Plaintiff had an "impairment or combination of impairments that meets or medically equals that of the listed impairments . . ." (R. 29). The Eleventh Circuit has held repeatedly that findings such as this suffice in evidencing consideration of the combined effects of a claimant's impairments. *See Wilson*, 284 F.3d at 1224-25; *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986). Consequently, Plaintiff has not demonstrated that relief is warranted on this claim.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 2nd day of September 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record